Emily L. Robinson, Esq. (SBN 285343)
Law Office of Emily L. Robinson
5012 Eagle Rock Blvd.
Los Angeles, CA 90041
emily@lawofficeemilyrobinson.com
(323) 524-7611
(323) 524-4001

Counsel for Petitioner

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA

HERMENEGILDO ALBINEZ ANTUNEZ,

(A# 242-529-557)
Petitioner,
vs.

Markwayne MULLIN, Secretary, U.S. Department of Homeland Security; Todd BLANCHE, Acting U.S. Attorney General; David VENTURELLA, Acting Director, Immigration and Customs Enforcement; Andre QUINONES, Acting Director, Los Angeles Field Office, Immigration and Customs Enforcement, Enforcement and Removal Operations; DIRECTOR, U.S. Citizenship and Immigration Services; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; IMMIGRATION AND CUSTOMS ENFORCEMENT; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; and U.S. DEPARTMENT OF HOMELAND SECURITY,

Respondents.

Case No. ________________

**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS**

**IMMIGRATION HABEAS CASE — DETAINED**

## INTRODUCTION

1. Petitioner Hermenegildo Albinez Antunez is a 33-year-old native and citizen of Mexico who has lived in Los Angeles since he entered the United States in 2013. He is married to Rebeca Castaneda Peralta, a lawful permanent resident of the United States, and is the father of two minor United States citizen daughters. For the past ten years he has worked at the same restaurant, where he is now an assistant manager, and he is his family's sole source of income. He has no criminal record, has never been detained by immigration authorities, and has never been ordered removed. On the morning of November 12, 2026, he went to the U.S. Citizenship and Immigration Services ("USCIS") Application Support Center in Gardena, California ("ASC"), for a biometrics appointment that USCIS had scheduled and that federal regulations required him to attend. He left in ICE custody. Respondents have held him ever since.

2. Petitioner was at the ASC because he was following the procedure the Department of Homeland Security created for families like his. His wife petitioned for him on Form I-130 in September 2022, and USCIS approved the petition on November 7, 2025. Because he entered without inspection, he must complete his immigrant visa abroad, and leaving the country after more than a year of unlawful presence ordinarily triggers a ten-year bar to return. 8 U.S.C. § 1182(a)(9)(B)(i)(II). DHS established the Form I-601A provisional unlawful-presence waiver so that eligible family members could seek a waiver of that bar *before* departing, precisely to shorten the separation of families, and in 2016 extended it to applicants, like Petitioner, whose qualifying relative is a lawful permanent resident spouse. 78 Fed. Reg. 536, 536–37 (Jan. 3, 2013); 81 Fed. Reg. 50,244, 50,245–46 (July 29, 2016). The regulation requires the applicant to give biometrics at a USCIS location in the United States and treats a failure to appear as abandonment, requiring denial. 8 C.F.R. § 212.7(e)(3)(ii), (e)(6)(ii). Petitioner filed his I-601A through counsel, USCIS received it on October 16, 2026, and USCIS then told him where and when to appear: the ASC, at 9:00 a.m. on November 12, 2026.

3. Upon information and belief, no officer gave Petitioner any reason for his arrest, and none has been provided since. Whatever reason Respondents may now offer, Petitioner's lack of status was not news to DHS. His entry without inspection and lack of status were

disclosed in the application USCIS had summoned him to support; they are the reason the I-601A process exists. By the morning of November 12, DHS knew his name, his date of birth, his home address, his wife, his daughters, his immigration history, and exactly where he would be, because it had chosen the time and place.

4. Petitioner's detention is unlawful on several distinct grounds, and each of them, standing alone, requires that this Court order his release rather than remit him to further agency process. Section 1226(a) permits an immigration arrest only "[o]n a warrant issued by the Attorney General," 8 U.S.C. § 1226(a), and the narrow exception in 8 U.S.C. § 1357(a)(2) permits a warrantless arrest only where an officer has reason to believe both that the person is unlawfully present and that he "is likely to escape before a warrant can be obtained for [his] arrest." Upon information and belief, Respondents had no warrant when they arrested him, and none has been produced to Petitioner or his counsel, and no officer could reasonably have believed that a man who had just checked in for a government appointment, with his address in the government's file, would escape before a warrant could be obtained. Because he presented himself to the Government at its direction, there was no flight concern at all. A Form I-200 or Notice to Appear prepared after he was restrained cannot authorize the restraint that preceded it. *Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018). And Respondents have never made, or disclosed, the individualized custody determination that civil detention under § 1226(a) requires. 8 C.F.R. §§ 236.1(c)(8), 287.3(d).

5. The setting compounds every one of these defects. Respondents used a compulsory step in a family-unity program to bring him into the ASC and turned him over to ICE. A program DHS created to reduce the separation of families became the occasion for imposing that separation immediately. Courts have rejected the use of a required immigration-benefits appointment as the occasion for arrest. *Xiu Qing You v. Nielsen*, 321 F. Supp. 3d 451, 466 (S.D.N.Y. 2018). And courts in this District have ordered immediate release, not a bond hearing, of applicants arrested at USCIS appointments, *Ma v. Warden*, No. 5:26-cv-05707-KK-DFM, ECF No. 9 (C.D. Cal. Oct. 8, 2026); *Okeshov v. Santacruz*, No. 5:26-cv-06187-AS, ECF No. 12 (C.D. Cal. Nov. 3, 2026), and of persons held under § 1226(a) without the initial custody

determination it requires, *Dorantes Saldivar v. Warden of Adelanto ICE Processing Ctr.*, No. 5:26-cv-06400-DTB, ECF No. 14, at 11–16 (C.D. Cal. Nov. 6, 2026).

6. A bond hearing would not remedy any of this. An immigration judge deciding bond asks whether a person already lawfully held should be released going forward; he cannot supply a warrant that did not exist, make an escape determination no officer made, or restore the initial custody decision that was skipped. Sending Petitioner to bond would also require a family that has already paid to pursue the lawful immigrant visa process, and whose only income was Petitioner's, to pay again, in a forum where denials have risen to 57.4% of completed bond records and the median bond has risen to $10,000, for release from a custody that should never have begun. Ms. Castaneda Peralta, who was abandoned by both parents as a small child, abused by the relatives who raised her, and came to this country alone at seventeen, has been diagnosed with anxiety disorder and post-traumatic stress disorder; she does not work outside the home, does not drive, and depends on Petitioner for the family's income and for transportation to her and her children's medical appointments, and their seven-year-old daughter has a heart murmur that requires ongoing monitoring and has been referred back to pediatric cardiology, as the record already in USCIS's file shows. Two young United States citizen children have been without their father. Petitioner's detention serves no legitimate, nonpunitive purpose. **This Court should grant the Petition, declare Petitioner's arrest and detention unlawful, and order his immediate release.**

## JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. § 2241 (habeas corpus); 28 U.S.C. § 1331 (federal question); U.S. Const. art. I, § 9, cl. 2 (Suspension Clause); 28 U.S.C. § 1361 (mandamus); and 5 U.S.C. § 702 (Administrative Procedure Act). The Court may grant relief under § 2241, 28 U.S.C. § 2243, the Declaratory Judgment Act, 28 U.S.C. § 2201, and the All Writs Act, 28 U.S.C. § 1651.

8. Congress has preserved judicial review of legal and constitutional challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001); *Jennings v. Rodriguez*, 583 U.S. 281, 293–96 (2018); *Hernandez v. Sessions*, 872 F.3d 976, 987–88 (9th

Cir. 2017). Section 1226(e) does not bar review, because a claim that an arrest and custody decision proceeded without legal authority or through constitutionally deficient procedures is a question of law cognizable on habeas. *Martinez v. Clark*, 124 F.4th 775, 783–85 (9th Cir. 2024).

9. Section 1252(g) applies only to the three discrete actions it names: the decision to "commence proceedings, adjudicate cases, or execute removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). Section 1252(b)(9) does not convert an independent challenge to custody into review of a removal order. *Jennings*, 583 U.S. at 293–95. Petitioner is not subject to any order of removal. He does not ask this Court to review any decision to commence proceedings, to terminate proceedings, to approve his I-601A, to grant him any immigration status, or to suppress any evidence. He challenges the legal authority for the physical custody in which Respondents hold him now. Decisions addressing whether a defective arrest invalidates later removal proceedings therefore have no bearing on his claims. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039–40 (1984). Habeas "is at its core a remedy for unlawful executive detention," *Munaf v. Geren*, 553 U.S. 674, 693 (2008), and "the traditional function of the writ is to secure release from illegal custody," *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117–18 (2020).

10. Venue is proper in the Central District of California under 28 U.S.C. § 1391(e) and the immediate-custodian rule of *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004). Petitioner was arrested at the ASC in Gardena and taken to the ICE Los Angeles Field Office at 300 North Los Angeles Street in downtown Los Angeles, where, on information and belief, he remains; both locations are in Los Angeles County, within this District. Robinson Decl. ¶ 16. ICE's Online Detainee Locator does not list him. *Id.* ¶ 17 & Ex. A. Because Respondents have not confirmed where he is physically held, the Field Office Director, who directs and controls ICE's custody of detainees within the Los Angeles Area of Responsibility, is the appropriate custodian respondent. Should Respondents move Petitioner after this Petition is filed, this Court retains jurisdiction and may direct any respondent within its jurisdiction with legal authority to effectuate his release. *Padilla*, 542 U.S. at 440–41.

## REQUIREMENTS OF 28 U.S.C. § 2243

11. The Court must grant the petition for writ of habeas corpus or issue an order to show cause to Respondents "forthwith," unless Petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require Respondents to file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* The return must "certify[] the true cause of the detention." *Id.*

12. Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (citation omitted), *overruled in part on other grounds by Coleman v. Thompson*, 501 U.S. 722 (1991). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000) (quoting *Ruby v. United States*, 341 F.2d 585, 587 (9th Cir. 1965)).

13. The facts that decide this Petition are in Respondents' exclusive possession: whether any Form I-200 existed when Petitioner was restrained, when any Notice to Appear was issued, who signed each, what any officer knew and concluded about likelihood of escape before the arrest, whether any custody determination was made, and whether ICE selected Petitioner for arrest before he arrived. A form bearing a typed date, or a declaration summarizing the agency's view, does not establish when arrest authority actually arose. Petitioner therefore asks that the return be accompanied by the contemporaneous, time-stamped records identified in the Prayer for Relief. The Court may require production of those records and expand the record under Rules 1(b), 6(a), and 7(a) of the Rules Governing Section 2254 Cases. *Harris v. Nelson*, 394 U.S. 286, 300 (1969).

## PARTIES

14. Petitioner HERMENEGILDO ALBINEZ ANTUNEZ is a native and citizen of Mexico, Alien Registration Number A 242-529-557. He is in the custody of ICE's Los Angeles

Field Office. After his arrest he was taken to the Field Office at 300 North Los Angeles Street, Los Angeles, California, where, on information and belief, he remains.

15. Respondent Markwayne MULLIN is the Secretary of Homeland Security, responsible for the implementation and enforcement of the Immigration and Nationality Act, including the operations of ICE and USCIS, with ultimate custodial authority over Petitioner. He is sued in his official capacity.

16. Respondent Todd BLANCHE is the Acting Attorney General of the United States, responsible for the Department of Justice, of which the Executive Office for Immigration Review is a component. He is sued in his official capacity.

17. Respondent David VENTURELLA is the Acting Director of U.S. Immigration and Customs Enforcement, which operates the immigration detention system. He is sued in his official capacity.

18. Respondent Andre QUINONES is the Acting Field Office Director of the Los Angeles Field Office of ICE Enforcement and Removal Operations, which, on information and belief, made the challenged arrest and custody decisions and has custody of persons held by ICE within its Area of Responsibility, including Petitioner. On information and belief, he is Petitioner's immediate custodian. He is sued in his official capacity.

19. Respondent DIRECTOR, U.S. Citizenship and Immigration Services, is responsible for the adjudication of Petitioner's pending Form I-601A and for the operation of the ASC, and is sued in an official capacity, designated by title pursuant to Federal Rule of Civil Procedure 17(d).

20. Respondents EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, and U.S. DEPARTMENT OF HOMELAND SECURITY are the federal agencies responsible, respectively, for custody redeterminations in removal proceedings, for the detention and removal of noncitizens, for adjudication of Petitioner's pending application and the appointment at which he was arrested, and for implementing and enforcing the Act.

## STATEMENT OF FACTS

### A. More Than Thirteen Years in Los Angeles and a Family That Depends on Him

21. Petitioner was born in Oaxaca, Mexico, in 1993. Robinson Decl. Ex. C ("Albinez Antunez Decl.") ¶ 1. He entered the United States without inspection in 2013, at the age of nineteen, and has lived in Los Angeles ever since. Albinez Antunez Decl. ¶ 2. He was not apprehended when he entered, and he has never been arrested, charged, or convicted of any crime. *Id.* He has never been placed in removal proceedings or ordered removed, has never been detained by immigration authorities before November 12, 2026, and has never been subject to ICE reporting or supervision. Robinson Decl. ¶ 8 & Ex. G.

22. Petitioner's wife, Rebeca Castaneda Peralta, is a lawful permanent resident of the United States. She came to the United States alone at the age of seventeen, was granted asylum, and later became a lawful permanent resident. Robinson Decl. Ex. C ("Castaneda Peralta Decl.") ¶¶ 1, 11–12. She and Petitioner have known each other since she was fifteen, when they were neighbors in the same community; they began their relationship in 2017 and married on August 9, 2022. *Id.* ¶ 4; Albinez Antunez Decl. ¶ 4. They have two daughters, both United States citizens, born in 2019 and 2023, who live with them in Los Angeles. Castaneda Peralta Decl. ¶ 5.

23. For the past ten years, Petitioner has worked at the same restaurant, where he is now an assistant manager. Albinez Antunez Decl. ¶ 6. He is the family's sole financial provider: Ms. Castaneda Peralta stays home full-time to care for their daughters, and Petitioner's income pays the family's rent, medical costs, school expenses, and every other household necessity. *Id.*; Castaneda Peralta Decl. ¶¶ 6, 13. He helps his daughters with their homework every day and, on his day off, takes them to and from school. Albinez Antunez Decl. ¶ 8; Castaneda Peralta Decl. ¶¶ 14–15.

### B. The Approved Family Petition and the Purpose of the I-601A Provisional Waiver

24. On September 21, 2022, Ms. Castaneda Peralta filed a Form I-130, Petition for Alien Relative, on Petitioner's behalf as the husband of a lawful permanent resident. USCIS approved the petition on November 7, 2025, under INA § 203(a)(2)(A), and forwarded it to the

Department of State's National Visa Center for consular processing. Robinson Decl. Ex. D. The family then paid the immigrant visa processing fees. Robinson Decl. Ex. E.

25. Because Petitioner entered without inspection, he cannot ordinarily adjust status in the United States, 8 U.S.C. § 1255(a), and must complete his immigrant visa at a consulate abroad. His departure after more than a year of unlawful presence would ordinarily trigger a ten-year bar to readmission. 8 U.S.C. § 1182(a)(9)(B)(i)(II). Congress authorized a waiver of that bar where refusal of admission would cause extreme hardship to a United States citizen or lawful permanent resident spouse or parent. *Id.* § 1182(a)(9)(B)(v).

26. Before 2013, an applicant in Petitioner's position had to leave the United States, attend his consular interview, be found inadmissible, and only then apply for the waiver, remaining abroad, separated from his family, while it was adjudicated. DHS created the Form I-601A provisional unlawful-presence waiver to permit eligible immigrant visa applicants to seek that waiver before departing, explaining that the procedure would reduce the time United States citizens are separated from their family members and the humanitarian and financial hardship that separation causes. 78 Fed. Reg. at 536–37. DHS reaffirmed that family-unity purpose in 2016, when it expanded the program to all statutorily eligible immigrant visa applicants, including those, like Petitioner, whose qualifying relative is a lawful permanent resident spouse. 81 Fed. Reg. at 50,245–46.

27. A provisional waiver does not confer lawful status, employment authorization, or protection from removal. 8 C.F.R. § 212.7(e)(2). But the program is by design one for persons who are physically present in the United States without lawful status and are pursuing immigrant visas through consular processing. *Id.* § 212.7(e)(3). An applicant's unlawful presence is not a fact the program uncovers; it is the premise of every application.

28. Through his immigration counsel, Santos Immigration Law, LLC, Petitioner filed his Form I-601A, which USCIS received on October 16, 2026. Robinson Decl. Ex. B (Receipt Notice). The application disclosed his full name, date of birth, residential address, the approved I-130, his entry without inspection in 2013, and his immigration history, together with

a legal brief, declarations from both spouses, medical records, tax returns, and other evidence of the hardship his wife would suffer if the family were separated. *See* Robinson Decl. Ex. C.

**C. Respondents Are Well Aware of the Hardships Petitioner and His Family Face**

29. Petitioner's I-601A submission documents a lifetime of trauma in Ms. Castaneda Peralta's own history. Her father left when she was two months old, and her mother abandoned her at three. Castaneda Peralta Decl. ¶ 3. She was raised by a grandmother who left her alone for weeks at a time, went to school hungry and unwashed, and was beaten with belts by the relatives in whose home she lived. *Id.* ¶¶ 3, 7–8. She worked packing asparagus from the age of thirteen, crossed into the United States alone at seventeen, was detained by immigration officers and placed in a shelter for minors, and only later obtained asylum and then lawful permanent residence. *Id.* ¶¶ 11–12. She has been diagnosed with anxiety disorder and post-traumatic stress disorder. *Id.* ¶ 9. After the birth of each of their daughters she suffered postpartum depression, and each time Petitioner stayed home for forty days to care for her and the baby. *Id.* ¶ 16.

30. Petitioner is the stability that history never gave her. Ms. Castaneda Peralta does not work outside the home and has no income of her own; Petitioner is the family's sole financial provider. Castaneda Peralta Decl. ¶¶ 6, 13. She does not drive and relies on Petitioner to take her and the children to their medical appointments. *Id.* ¶ 14. Because of what she experienced as a child, she does not leave her daughters with anyone else. *Id.* ¶ 10. All of this was in USCIS's possession before November 12, 2026.

31. Their older daughter, A.A.C., now seven years old, was diagnosed with a heart murmur before she was born. Albinez Antunez Decl. ¶ 7. She has needed annual checkups since birth to monitor it, and her doctors have told the family they cannot guarantee that the murmur will close on its own. *Id.* She does not currently need medication and lives a normal childhood, but her condition requires ongoing medical supervision, and any interruption in her care could put her health at risk. *Id.* At her most recent visit, on March 31, 2026, her pediatrician noted that she had last been seen by a cardiologist about two years earlier and referred her back to pediatric cardiology for an updated evaluation of the murmur. Robinson Decl. Ex. C at 9, 13

(South Central Family Health Center record). Petitioner is the parent who makes sure her appointments are kept, and he is the one who drives the family to them. Castaneda Peralta Decl. ¶¶ 14, 17. The I-601A record also shows that the nearest medical center to the family's hometown in Oaxaca is about four hours away and lacks specialized pediatric cardiac care. *Id.* ¶ 23; Albinez Antunez Decl. ¶ 10. With Petitioner detained, A.A.C.'s cardiology follow-up now depends on a mother who does not drive, has no income, and is caring for two young children alone.

32. Petitioner's two minor United States citizen daughters are not qualifying relatives for the waiver, but the consequences of their father's absence bear directly on the family's hardship and on the urgency of relief. Ms. Castaneda Peralta has described her fear that her daughters will suffer the same sense of abandonment she suffered as a child. Castaneda Peralta Decl. ¶ 20. Since November 12, they have been without the parent who supports, transports, and helps care for them, and Ms. Castaneda Peralta, who has no income of her own, has been left to manage alone.

33. The household depends entirely on Petitioner's income. Ms. Castaneda Peralta does not work outside the home, and without Petitioner the family cannot pay its rent or meet its basic needs. Castaneda Peralta Decl. ¶¶ 13, 18. The family has already paid for immigration counsel and government fees to pursue the lawful immigrant visa process. Robinson Decl. Exs. B, E. Petitioner's detention has cut off the family's only income and imposed new legal expenses.

**D. USCIS Required Petitioner to Appear for Biometrics, and He Appeared**

34. The I-601A regulation requires the applicant to provide biometrics to USCIS at a location in the United States designated by USCIS. 8 C.F.R. § 212.7(e)(3)(ii), (e)(6)(i). If the applicant fails to appear for the scheduled biometrics appointment, USCIS considers the application abandoned and denies it. *Id.* § 212.7(e)(6)(ii).

35. By notice dated October 23, 2026, USCIS scheduled Petitioner's biometrics appointment for November 12, 2026, at 9:00 a.m., at the ASC, 15715 Crenshaw Boulevard, Room B-112, Gardena, California. Robinson Decl. Ex. F (ASC Appointment Notice). The

notice warned in capital letters: "IF YOU FAIL TO APPEAR AS SCHEDULED, USCIS WILL CONSIDER YOUR BENEFIT REQUEST ABANDONED AND IT MAY BE DENIED." *Id.* To continue pursuing his waiver, Petitioner had no choice but to attend.

36. Petitioner arrived at the ASC as directed on the morning of November 12, 2026, for his 9:00 a.m. appointment. Robinson Decl. ¶ 12. He never came out.

**E. Petitioner's Apprehension and Detention**

37. When Petitioner did not return from his appointment, Ms. Castaneda Peralta called his cell phone and checked its location. Robinson Decl. ¶ 13. An ICE officer answered Petitioner's phone. *Id.* That is how his family learned that ICE had taken him into custody at the ASC. *Id.* Upon information and belief, no officer showed Petitioner a warrant, identified a Notice to Appear, a criminal charge, or a missed appearance, or gave him any reason for his detention, and no one from USCIS or ICE has contacted his family or counsel to explain it. *Id.* ¶ 14. Upon information and belief, his biometrics for the I-601A were never collected; to the extent any fingerprints or photographs were taken of him that day, they were taken by or for ICE for its enforcement purposes, not to complete his application. *Id.* ¶ 15.

38. Petitioner's lack of lawful status was not a new discovery. It was disclosed in the application for which USCIS had required his appearance, and it is the premise of every I-601A application. *Supra* ¶¶ 26–28. Nothing in the information available to Petitioner suggests that officers learned anything at the appointment about his immigration history, any criminal conduct, or any risk of flight.

39. Contemporaneous reporting describes immigration enforcement activity at Southern California Application Support Centers in the days before Petitioner's arrest, including a DHS vehicle seen leaving the Gardena center at approximately 9:40 a.m. on November 4, 2026, an arrest by ICE agents at the USCIS center on South La Brea Avenue the same day, and reports from community rapid-response organizers that arrests at application support centers have become increasingly frequent. *ICE Arrests and Sightings Across LA County, Nov. 1–5*, L.A. Pub. Press (Nov. 5, 2026), https://lapublicpress.org/2026/11/migra-in-la-county-ice-dhs-sightings/. Six days before Petitioner's arrest, at the same ASC, in the same

room, at the same 9:00 a.m. appointment time, ICE arrested another I-601A applicant represented by Petitioner's counsel, the wife of a United States citizen, under materially identical circumstances. *See* Verified Pet. for Writ of Habeas Corpus, *Vázquez Ramírez v. Mullin*, No. 5:26-cv-06810 (C.D. Cal. filed Nov. 12, 2026). Petitioner does not offer those reports as proof of a formal policy or of the number of arrests. They bear on whether ICE selected Petitioner, or applicants like him, for arrest before he arrived, and on what Respondents must produce.

40. Respondents had his identity, his address, his immigration history, and the date, time, and location of his appointment. If ICE decided to arrest him before the appointment, it had days or weeks to issue a Notice to Appear and seek a warrant from an independent officer. If ICE claims it decided only during the appointment, it must identify when that decision was made, on what facts, by whom, and why a warrant could not be obtained while Petitioner was inside the ASC.

41. From the ASC, ICE took Petitioner to the ICE Los Angeles Field Office at 300 North Los Angeles Street in downtown Los Angeles. Robinson Decl. ¶ 16. On information and belief, he remains there. *Id.* As of the evening of November 12, 2026, ICE's Online Detainee Locator returns no record for him. *Id.* ¶ 17 & Ex. A. Respondents have not confirmed to his family or counsel where he is being held. *Id.* Neither Petitioner nor his counsel has received any Form I-200 Warrant for Arrest of Alien, any Notice to Appear, any Form I-213, any Form I-286 Notice of Custody Determination, or any other statement of the authority for his arrest or the reasons for his continued detention. Robinson Decl. ¶ 18. On information and belief, no Form I-200 existed when Petitioner was restrained, no Notice to Appear had been issued at that time, no officer made a pre-arrest determination that he was likely to escape before a warrant could be obtained, and no officer has made an individualized determination that he poses a danger or a flight risk.

42. No immigration judge has reviewed Petitioner's custody, and no judge of any kind has determined whether probable cause supported his arrest. No Notice to Appear has been filed with the immigration court. As of November 12, 2026, EOIR's Automated Case

Information system returns "No case found for this A-Number" for Petitioner. Robinson Decl. ¶ 19 & Ex. G. Removal proceedings commence only when a Notice to Appear is filed with the immigration court. 8 C.F.R. § 1003.14(a). Respondents are thus holding Petitioner in civil detention "pending a decision on whether the alien is to be removed," 8 U.S.C. § 1226(a), without having initiated any proceeding in which that decision could be made. He has been detained continuously since November 12, 2026. His wife and daughters remain without the husband and father on whom they depend, and his I-601A remains pending with its biometrics requirement unfulfilled because of an arrest at the biometrics appointment itself.

## LEGAL BACKGROUND

### A. Petitioner Is Detained Under § 1226(a)

43. Noncitizens who entered without inspection and are apprehended in the interior are subject to § 1226(a), not mandatory detention under § 1225(b)(2). *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1164–65 (9th Cir. 2026). Petitioner was apprehended in Los Angeles County after more than thirteen years of residence, not at or near the border. He has no criminal history that could implicate § 1226(c) and no removal order that could implicate § 1231. If Respondents contend that some other statute governs his detention, they must identify it in their return.

44. Section 1226(a) "and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decision maker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022). Those protections presuppose a lawful arrest and an initial custody determination by the agency, which the immigration judge's hearing then reviews rather than replaces.

**B. Section 1226(a) Requires a Warrant Obtained Before the Arrest and an Individualized Custody Determination**

45. Section 1226(a) authorizes an arrest "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). The warrant must exist before officers take the person into custody, because the statute "authorizes detention only '[o]n a warrant issued' by the Attorney General leading to the alien's arrest." *Jennings*, 583 U.S. at 302. "The federal statutory structure instructs when it is appropriate to arrest an alien during the removal process," *Arizona v. United States*, 567 U.S. 387, 407 (2012), and a form completed after the person is already restrained does not satisfy it. The implementing regulation imposes a further and distinct requirement concerning the charging document: an arrest may be made under the authority of Form I-200 only "[a]t the time of issuance of the notice to appear, or at any time thereafter." 8 C.F.R. § 236.1(b)(1).

46. Detention following a lawful arrest is discretionary: the Attorney General "may continue to detain the arrested alien" or "may release the alien" on bond or conditional parole. 8 U.S.C. § 1226(a)(1)–(2). An officer makes the initial custody determination and may release the noncitizen where release "would not pose a danger to property or persons" and he "is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). After a warrantless arrest, "a determination will be made within 48 hours of the arrest," absent an emergency or other extraordinary circumstance, "whether the alien will be continued in custody or released on bond or recognizance." 8 C.F.R. § 287.3(d). Review before an immigration judge follows that determination. 8 C.F.R. §§ 236.1(d)(1), 1003.19.

47. Immigration detention is civil and may not be punitive. *Zadvydas*, 533 U.S. at 690. It may serve only two purposes, "ensuring the appearance of aliens at future immigration proceedings" and "[p]reventing danger to the community," *id.*, and it must bear a reasonable relation to those purposes, *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

48. Courts applying § 1226(a) have ordered release where officers did not issue a Notice to Appear before or together with the detention, did not arrest on or after the issuance of a warrant, made no initial custody determination before or at the time of detention, or never told the noncitizen the basis for continued detention, treating each omission as independently sufficient. *Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility*, No. 1:26-cv-05661-DAD-SCR (HC), 2026 WL 2294963, at *2–3 (E.D. Cal. Aug. 10, 2026) (collecting cases). ICE does not have the "free-ranging ability to arrest and detain people, and figure out the reasons later." *Gopie v. Lyons*, No. 25-cv-05229-SJB, 2025 WL 3167130, at *3 (E.D.N.Y. Nov. 13, 2025). Where no initial custody determination was made, a later bond hearing leaves the detainee to "guess the basis for ICE's determination that he is dangerous or a flight risk and then disprove it." *Quijay Garcia v. Mattos*, No. 2:26-cv-01205-RFB-BNW, 2026 WL 1972386, at *5–8 (D. Nev. July 8, 2026).

**C. A Valid Immigration Warrant Also Requires a Prior or Contemporaneous Notice to Appear and an Independent Issuing Officer**

49. Because the regulation permits an arrest under Form I-200 only "[a]t the time of issuance of the notice to appear, or at any time thereafter," 8 C.F.R. § 236.1(b)(1), "the notice to appear is a precondition to an otherwise substantively valid arrest warrant," *M-J-M-A- v. Hernandez*, No. 6:25-cv-02011-MTK, ECF No. 170, at 9 (D. Or. Nov. 2, 2026) (citing *Yith v. Nielsen*, 881 F.3d 1155, 1167 (9th Cir. 2018)). An I-200 "cannot be used to effectuate an arrest before an NTA has been issued." *Quintero Meza v. Genalo*, 2026 WL 2875630, at *2 (S.D.N.Y. Sept. 24, 2026) (quoting *Yeleshev v. LaRocco*, No. 2:26-cv-02294-SJB, 2026 WL 1353806, at *2 (E.D.N.Y. May 14, 2026)). That defect "alone is sufficient to render the arrest improper and justify Petitioner's release." *Quintero Meza*, 2026 WL 2875630, at *3; *Zurita Navarro*, 2026 WL 2294963, at *2.

50. The warrant must also come from an officer independent of the arrest. An immigration officer "may not arrest and search on his own"; "[a]pplication for a warrant must be made to an independent responsible officer." *Abel v. United States*, 362 U.S. 217, 236 (1960). A valid civil immigration warrant therefore requires "(1) a simultaneous or prior issuance of a

Notice to Appear, and (2) a sufficiently independent executive officer issuing the warrant." *M-J-M-A-*, ECF No. 170, at 11. "If ICE officials fail to meet those requirements when issuing or executing a warrant, then the arrest warrant is invalid, and any arrest pursuant to the invalid warrant is necessarily a warrantless arrest." *Id.*

**D. Statutory and Constitutional Limits on Warrantless Immigration Arrests**

51. "If no federal warrant has been issued, those officers have more limited authority." *Arizona*, 567 U.S. at 408. Section 1357(a)(2) permits a warrantless arrest only where the officer has "reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); *accord* 8 C.F.R. § 287.8(c)(2)(i)–(ii). The Ninth Circuit has equated the "reason to believe" standard with the constitutional requirement of probable cause. *Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980). An arrest made in violation of these provisions is unlawful. *Perez Cruz v. Barr*, 926 F.3d 1128, 1137 (9th Cir. 2019); *Sanchez v. Sessions*, 904 F.3d 643, 650 (9th Cir. 2018).

52. A person is seized when, in view of all the circumstances, a reasonable person would not believe he was free to leave. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (opinion of Stewart, J.); *see California v. Hodari D.*, 499 U.S. 621, 626 (1991). Whether a detention has become an arrest turns on the objective restraints imposed, not on the label an agency later attaches. *United States v. Del Vizo*, 918 F.2d 821, 824–25 (9th Cir. 1990). An applicant who arrives voluntarily for a government appointment does not consent to detention when ICE officers take him into custody before he can complete the appointment and leave. The reasonableness of a seizure "must be measured by what the officers knew before they conducted their search," *Florida v. J.L.*, 529 U.S. 266, 271 (2000), and information obtained during a seizure, and a warrant issued afterward on the strength of it, cannot justify the seizure that produced it.

53. Nothing an officer could learn at a routine biometrics check-in supplies, without more, probable cause to arrest or a likelihood of escape. *See* 8 C.F.R. § 287.8(b)(2), (c)(2); *Mountain High Knitting*, 51 F.3d at 218. And where an arrest is made without a judicial warrant,

the Fourth Amendment requires a prompt determination of probable cause by a neutral arbiter as a prerequisite to extended restraint. *Gerstein v. Pugh*, 420 U.S. 103, 114, 125 (1975); *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). The Ninth Circuit has applied that principle to civil immigration detention. *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 824 (9th Cir. 2020).

54. Likelihood of escape is a separate predicate. Where the Government has not alleged grounds for a reasonable belief that the person was likely to escape, § 1357(a)(2) "forecloses the possibility of a permissible civil arrest." *Mountain High Knitting, Inc. v. Reno*, 51 F.3d 216, 218 (9th Cir. 1995). ICE's own nationwide policy, issued under the settlement of a class action challenging warrantless arrests made without particularized escape determinations, requires "probable cause that the individual is likely to escape before a warrant can be obtained for the arrest"; directs officers to consider the totality of the circumstances known before the arrest, including whether the officer can "determine the individual's identity" and the person's "ties to the community (such as a family, home, or employment)"; and provides that "mere presence within the United States in violation of U.S. immigration law" is not, on its own, evidence of flight risk. *M-J-M-A- v. Hermosillo*, 822 F. Supp. 3d 1147, 1172 (D. Or. 2026) (quoting *Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1217–18 (D. Colo. 2025)); *see Castañon Nava v. Dep't of Homeland Sec.*, 806 F. Supp. 3d 823, 837–38 (N.D. Ill. 2025). Officers must document the facts and circumstances of a warrantless arrest, including their findings on escape risk, as soon as practicable. *M-J-M-A-*, 822 F. Supp. 3d at 1173.

55. The failure of immigration officers in this District to obtain warrants and to make the escape determination the statute requires is well known and documented. That problem has arisen largely in stops in the field, where officers encounter a person on the street and must decide on the spot whether he is likely to flee. After discovery, full briefing, and evidentiary hearings, a court in this District found "ample evidence that Defendants have an ongoing policy and practice of conducting warrantless arrests in violation of the requirement to conduct a

likelihood-of-escape analysis." *Vasquez Perdomo v. Mullin*, No. 2:25-cv-05605-MEMF-SP, 2026 WL 2751388, at *14 (C.D. Cal. Sept. 2, 2026).[1]

56. Petitioner's case is the opposite of a field encounter. The warrantless-arrest exception exists for the officer who comes upon a person and has reason to believe he will escape before a warrant can be obtained. 8 U.S.C. § 1357(a)(2). A person who presents himself to the Government, at a time and place the Government chose, inside a federal facility, after disclosing his identity, address, and immigration history in a pending application, presents no flight concern at all. Nothing about his presence there could supply the second predicate the statute requires, and his unlawful presence alone cannot supply it. *Mountain High Knitting*, 51 F.3d at 218; *supra* ¶ 54.

57. Upon information and belief, Respondents had no warrant when they arrested Petitioner. No Form I-200 was shown to him, none has been produced since, and no Notice to Appear has been filed. *Supra* ¶¶ 41–42. Any Form I-200 Respondents might produce after the fact could not change that result. A Form I-200 is invalid unless a Notice to Appear was issued at or before the time it was executed, 8 C.F.R. § 236.1(b)(1); *M-J-M-A-*, ECF No. 170, at 9–11, and a warrant authorizes only an arrest. It does not supply the individualized custody determination that continued detention requires, 8 C.F.R. §§ 236.1(c)(8), 287.3(d); the notice, reasons, and opportunity to be heard that due process requires before the Government takes a person's liberty; a legitimate, nonpunitive purpose for detention; or the reasoned consideration of relevant factors the Administrative Procedure Act requires. *Infra* Counts Four and Six through Nine.

**E. A Later Warrant, 8 C.F.R. § 287.3, or a Later Bond Hearing Cannot Cure an Unlawful Arrest**

58. Section 287.3(d) requires officials to decide "within 48 hours of the arrest" whether the person will remain in custody or be released and whether a notice to appear and warrant of arrest "will be issued." 8 C.F.R. § 287.3(d). Those are post-arrest custody decisions,

[1] The Government has appealed.

and they cannot supply the authority required to make the arrest. Section 287.3(a) applies to a person "arrested without a warrant of arrest under the authority contained in section 287(a)(2) of the Act," meaning § 1357(a)(2), and § 287.8(c)(2)(iv) directs the officer to follow § 287.3 only after an arrest that complies with the preceding requirements.

59. Courts have accordingly rejected a post-arrest warrant as a cure for an unlawful arrest. *Castro Chivalan v. LaRose*, No. 3:26-cv-04258-LEK-SBC, ECF No. 6, at 9 (S.D. Cal. Aug. 27, 2026) ("compliance with the procedural requirements under Section 287.3 says nothing about whether the preceding arrest itself complied with Section 1357(a)(2)"); *Urias v. Semaia*, No. 5:26-cv-02753-DTB, 2026 WL 1710375, at *4–6 (C.D. Cal. June 10, 2026); *Quezada-Estrada v. Lyons*, No. 1:26-cv-01599-NYW, 2026 WL 1361880, at *5 (D. Colo. May 15, 2026) ("a post hoc warrant does not permit detention that arose from an unlawful warrantless arrest"); *M-J-M-A-*, 822 F. Supp. 3d at 1158 ("[a]n arrest cannot be justified after the fact"). A regulation cannot enlarge the arrest authority Congress granted. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400, 412 (2024). If a later warrant could validate an earlier warrantless arrest, the words "and is likely to escape before a warrant can be obtained" would do no work.

60. A later bond hearing does not cure an unlawful arrest either. An immigration judge deciding bond applies the factors in *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006), to decide whether a person already in custody should be released going forward, and has no authority to decide whether officers complied with § 1357(a)(2) or the Fourth Amendment. A bond hearing held after an unlawful arrest "is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip" a person of his freedom. *Juarez Evangelista v. Semaia*, No. 5:26-cv-04787-BFM, ECF No. 10, at 8 (C.D. Cal. Sept. 8, 2026) (quoting *Garcia-Maya v. Mattos*, No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *8 (D. Nev. July 7, 2026)); *see Castro Chivalan*, ECF No. 6, at 9 ("[p]roviding Petitioner a bond hearing would not remedy the Fifth Amendment violation he has already experienced. Only release from detention can accomplish that now").

**F. Due Process Protects Petitioner's Established Liberty**

61. The Due Process Clause protects "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Hernandez*, 872 F.3d at 990 (quoting *Zadvydas*, 533 U.S. at 693). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. The process due depends on the private interest affected, the risk of erroneous deprivation and the value of additional safeguards, and the Government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

62. Petitioner was not previously released from ICE custody, and he does not rest his claims on a prior parole or order of supervision. But the absence of a prior detention does not end the inquiry. Courts in this District have ordered the immediate release of applicants arrested for the first time at required USCIS appointments, rejecting the contention that a prior custody decision is a prerequisite to a protected liberty interest. *See infra* ¶ 71. The Government knew of Petitioner's presence for years, approved his wife's petition for him, received an application disclosing everything about him, and commanded his attendance. His interest in the liberty he had lived in for more than thirteen years, in his home, with his family, is substantial.

63. Due process also protects Petitioner's interest in access to the procedures the immigration laws make available. A noncitizen has a protected interest in the right to seek relief even where there is no right to the relief itself. *Arevalo v. Ashcroft*, 344 F.3d 1, 15 (1st Cir. 2003). Where immigration authorities have created a process by which noncitizens may apply for lawful status, and then use the requirements of that very process to prevent the applicant from pursuing it, "there is a chilling effect on due process." *Portillo Vasquez v. Turek*, No. 2:25-cv-00741, slip op. at 12 (D. Vt. Sept. 25, 2025) (granting habeas to permit petitioner to complete her biometrics appointment without interference). The Fifth Amendment protects interests created by statutes and regulations that constrain agency decision-making, *Ching v. Mayorkas*, 725 F.3d 1149, 1155–58 (9th Cir. 2013), and the I-601A regulations provide that USCIS "will adjudicate" a properly filed application under the governing standards, 8 C.F.R. § 212.7(e)(8),

(9)(i). A court has recognized a protected interest in lawful consideration of a pending provisional waiver application, even though approval is discretionary. *Jimenez v. Nielsen*, 334 F. Supp. 3d 370, 386–89 (D. Mass. 2018). And the Ninth Circuit has expressed "grave doubt" that any statute allowing arbitrary detention without process could be constitutional. *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018).

**G. The Government May Not Weaponize a Mandatory Step in the Immigration Process for Enforcement Purposes**

64. In *Xiu Qing You v. Nielsen*, 321 F. Supp. 3d 451 (S.D.N.Y. 2018), DHS used a scheduled USCIS adjustment interview as the occasion to arrest the husband of a United States citizen and father of citizen children. The court held that the Government had used a benefits process "as a sword when it was intended to be used as a shield," rejected "arrest and detention practices predicated on manipulating the laws that Congress has passed," and explained that Congress did not intend its process "to become a mechanism for 'gotcha' law enforcement." 321 F. Supp. 3d at 466.

65. *You* involved a different benefits process and a prior removal order, but the I-601A program supplies an even more specific statement of purpose. DHS itself explained that it created the provisional waiver to reduce the separation of United States citizens, and later lawful permanent residents, from their family members. 78 Fed. Reg. at 536–37; 81 Fed. Reg. at 50,245–46. And unlike an interview an applicant might reschedule, I-601A biometrics are compulsory on pain of abandonment and denial. 8 C.F.R. § 212.7(e)(6)(ii). The I-601A does not immunize an applicant from lawful enforcement, but DHS may not use the appearance its own regulation compels to accomplish what the arrest statutes forbid.

66. DHS adopted the program knowing that it asks people it knows to be unlawfully present to identify themselves, disclose the facts that could support removal, and appear when told. During the 2013 rulemaking, commenters warned that the program would fail if participation exposed applicants to enforcement and asked for safeguards against referrals to ICE; DHS declined, relying on the enforcement priorities and Notice to Appear policy then in force, and stated that it did not generally anticipate initiating removal proceedings because a

provisional waiver was approved, denied, or withdrawn. 78 Fed. Reg. at 554–55. When DHS expanded the program in 2016, commenters renewed the warning, specifically that a future administration might change its enforcement policies; DHS again declined, representing that individuals who were not enforcement priorities would not be placed in removal proceedings solely because they filed an I-601A or were denied. 81 Fed. Reg. at 50,259. USCIS has since rescinded the enforcement framework on which DHS relied, USCIS Policy Memorandum PM-602-0187, *Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Deportable Aliens*, at 2 (Feb. 28, 2025), but DHS has never amended 8 C.F.R. § 212.7(e), rescinded the program, or disavowed the purposes it identified for it.

67. Courts have rejected the use of the family-based immigration process to lure applicants to their arrest. In *Martinez v. Nielsen*, the court held that the arrest of a noncitizen pursuing a provisional waiver at an I-130 interview, if left unchecked, "would render the provisional waiver a nullity." 341 F. Supp. 3d 400, 410 (D.N.J. 2018). In *Wanrong Lin v. Nielsen*, the court granted a preliminary injunction where the Government "used the I-130 interview to lure [the petitioner] to his arrest" and had thus "taken a rule that was promulgated for one purpose and used it for the opposite purpose." 377 F. Supp. 3d 556, 564 (D. Md. 2019). And in *Noto v. Noem*, No. 5:26-cv-80-JSS-PRL, ECF No. 10 (M.D. Fla. Feb. 5, 2026), the court granted a temporary restraining order against arrest at a scheduled adjustment-of-status interview. The arrest here is a more direct inversion still, because it took place at a step the I-601A regulation itself makes mandatory.

68. The APA requires courts to set aside agency action that is arbitrary, capricious, contrary to law, or in excess of statutory authority. 5 U.S.C. § 706(2)(A), (C). A court must examine "the reasons for agency decisions—or, as the case may be, the absence of such reasons." *Judulang v. Holder*, 565 U.S. 42, 53 (2011). An agency must consider the relevant factors and the serious reliance interests its prior course has engendered, *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009), and post hoc rationalizations cannot substitute for contemporaneous reasoning, *Arrington v. Daniels*, 516 F.3d 1106, 1112–13 (9th Cir. 2008).

**COURTS HAVE ORDERED IMMEDIATE RELEASE ON THESE FACTS**

69. Courts in this District and throughout this Circuit have ordered immediate release, rather than a bond hearing, where the Government arrested a noncitizen without a warrant and without the determination § 1357(a)(2) requires. *Dominguez Perez v. Acting Warden of the Adelanto Det. Ctr.*, No. 5:26-cv-03936-MBK, slip op. at 15 (C.D. Cal. July 30, 2026); *Urias v. Semaia*, No. 5:26-cv-02753-DTB, 2026 WL 1710375, at *6–7 (C.D. Cal. June 10, 2026); *Galvez Pantoja v. Dep't of Homeland Sec.*, No. 5:26-cv-02084-JDE, 2026 WL 1601897, at *4 (C.D. Cal. June 1, 2026); *Moreno Cristin v. Armant*, No. 5:26-cv-04024-DTB, ECF No. 10 (C.D. Cal. July 29, 2026); *Carbajal Torres v. Semaia*, No. 5:26-cv-03374-E, ECF No. 11 (C.D. Cal. June 29, 2026); *Castro Chivalan v. LaRose*, No. 3:26-cv-04258-LEK-SBC, ECF No. 6, at 7–10 (S.D. Cal. Aug. 27, 2026); *Gregorio v. LaRose*, No. 3:26-cv-03918-RBM-SBC, 2026 WL 2059095, at *1–2 (S.D. Cal. July 16, 2026); *Navarro Gomez v. Wofford*, No. 1:26-cv-05299 (VC), 2026 WL 2065708, at *3 (E.D. Cal. July 16, 2026).

70. Courts have likewise ordered release where the Government detained a noncitizen without the individualized custody determination § 1226(a) requires. *Hernandez Lopez v. Wofford*, No. 1:26-cv-08031-DAD-JDP, ECF No. 7, at 2–3 (E.D. Cal. Oct. 13, 2026); *Juarez Evangelista v. Semaia*, No. 5:26-cv-04787-BFM, ECF No. 10, at 5–9 (C.D. Cal. Sept. 8, 2026) ("[f]or utter lack of compliance with § 1226(a), Petitioner's detention was unlawful"). In *Dorantes Saldivar v. Warden of Adelanto ICE Processing Ctr.*, No. 5:26-cv-06400-DTB, ECF No. 14 (C.D. Cal. Nov. 6, 2026), the court found that the petitioner "was arrested without a warrant or any stated exception thereto," held that a later bond hearing "is no substitute" for the deliberative process § 1226(a) requires, and ordered release together with an injunction against re-detention without a hearing at which the Government bears the burden. *Id.* at 11–16.

71. Courts have applied those principles to arrests at USCIS appointments. In *Ma v. Warden*, No. 5:26-cv-05707-KK-DFM, ECF No. 9 (C.D. Cal. Oct. 8, 2026), the court ordered the immediate release of an applicant arrested at a USCIS biometrics appointment and enjoined re-detention without a hearing. In *Okeshov v. Santacruz*, No. 5:26-cv-06187-AS, ECF No. 12 (C.D. Cal. Nov. 3, 2026), the court ordered the release, without GPS or other monitoring, of an

applicant arrested at a required USCIS appointment. And in *Qu v. Janecka*, No. 5:26-cv-05419-CTS, ECF No. 10 (C.D. Cal. Oct. 9, 2026), the court ordered the release within twenty-four hours of asylum applicants arrested without warrants while attending a scheduled biometrics appointment, concluding that the arrests violated 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii) where the Government failed to establish any likelihood of escape.

72. Most recently, in a case strikingly similar to this one, a magistrate judge recommended immediate release of a petitioner arrested at a scheduled USCIS asylum interview after being told his paperwork was incorrect, where the I-200 and Notice to Appear were issued the following day and the Government identified no facts satisfying any exception to the warrant requirement. *Raymundo Hernandez v. Warden, Golden State Annex*, No. 1:26-cv-08532-KES-CDB, ECF No. 7, at 2–4 (E.D. Cal. Nov. 10, 2026) (amended findings and recommendations). The recommendation rested on the absence of contemporaneous warrant authority, notwithstanding a later bond hearing. *Id.*

73. Here, Petitioner challenges the present lawfulness of his physical custody under a statutory framework that imposes affirmative prerequisites on arrest and detention. Because Respondents did not satisfy those prerequisites when they took him into custody, no later process can make that custody lawful, and immediate release is the only adequate remedy.

## EXHAUSTION IS NOT REQUIRED, AND SEEKING BOND WOULD BE FUTILE

### A. No Statutory Exhaustion Requirement Applies

74. No statute requires exhaustion before a habeas petition challenging immigration detention. *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011). Any exhaustion requirement is prudential, and the Court may waive it. *Hernandez*, 872 F.3d at 988; *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). Prudential exhaustion is excused where agency remedies are inadequate or not efficacious, where pursuing them would be futile, where irreparable injury will result, or where the proceedings would be void. *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004); *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). A court may require exhaustion only where agency expertise is needed to generate a proper record, where relaxing the requirement would encourage deliberate bypass of the administrative

scheme, and where agency review is likely to allow the agency to correct its own mistakes. *Puga*, 488 F.3d at 815. None of those conditions is present here, and every ground for excusing exhaustion is.

**B. Neither an Immigration Judge Nor the Board Can Decide Whether the Arrest Was Lawful**

75. Neither an immigration judge nor the Board of Immigration Appeals may adjudicate constitutional claims. *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 804 n.2 (BIA 2020); *Matter of C-*, 20 I. & N. Dec. 529, 532 (BIA 1992). Neither decides in a custody proceeding whether officers complied with § 1357(a)(2), whether a Form I-200 existed when they made the arrest, or whether USCIS and ICE misused a compulsory benefits appointment. Because no administrative process exists for challenging an arrest, excusing exhaustion invites no one to bypass such a process, and because the error lies in the arrest itself, no agency decision could correct it. *See Liu v. Waters*, 55 F.3d 421, 426 (9th Cir. 1995).

76. A bond hearing would also invert the statutory sequence. The regulations require DHS to make the initial custody determination, 8 C.F.R. §§ 236.1(c)(8), 287.3(d), and place on the detainee the burden of establishing to the immigration judge's satisfaction that he is neither a danger nor a flight risk, *Rodriguez Diaz*, 53 F.4th at 1197. Respondents should not be permitted to skip their own threshold obligation and then require Petitioner to carry the burden of proving his entitlement to the liberty they took without authority. *Quijay Garcia*, 2026 WL 1972386, at *5–8.

**C. Immigration Courts Can No Longer Serve as Neutral Arbiters**

77. Petitioner does not seek a bond hearing, which could not cure the arrest. *See supra* ¶ 60. Nor could the immigration court provide a neutral or effective remedy. Immigration judges are attorneys within the Department of Justice, appointed by and serving subject to the direction of the Attorney General, a Respondent here. 8 C.F.R. §§ 1003.0(a), 1003.10(a). "The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980).

78. That subordination has shaped custody outcomes in this District. After *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), immigration judges repeatedly held that noncitizens in Petitioner's position were subject to mandatory detention and could not be released on bond at all, a position the Ninth Circuit has since rejected. *Rodriguez Vazquez*, 183 F.4th at 1164–65. A former immigration judge of the Denver Immigration Court, Brea Burgie, has attested that the Chief Immigration Judge instructed all immigration judges that *Yajure Hurtado* remained binding notwithstanding the final judgment of this District in *Maldonado Bautista v. Santacruz*, 813 F. Supp. 3d 1084 (C.D. Cal. 2025); that when he nonetheless found jurisdiction to consider bond, he was removed from all detained cases within two days and his supervisor reversed his prior bond grants; and that immigration judges were warned that failure to follow "agency policy" could result in discipline up to termination. Robinson Decl. Ex. J ("Burgie Decl.") ¶¶ 4, 9–15. A court of this District has likewise found that immigration judges "continue to rely on legal interpretations that were expressly found unlawful." *Palomera Baltazar v. Janecka*, No. 5:26-cv-00019-SSS-BFM, 2026 WL 413734, at *2–3 (C.D. Cal. Jan. 16, 2026).

79. The Adelanto Immigration Court's own records reflect the same shift. Zabdi J. Salazar, a Ph.D. candidate in Jurisprudence and Social Policy at Berkeley Law, has analyzed EOIR's administrative bond records for the Adelanto Immigration Court from January 1, 2024 through April 30, 2026. Robinson Decl. Ex. H ("Salazar Decl.") ¶¶ 1–2, 5. Comparing bond records completed before and after November 10, 2025, the period of an alleged EOIR directive concerning bond adjudications, denials rose from 39.3% to 57.4% of completed Adelanto bond records while the grant rate fell from 37.0% to 25.7%. *Id.* ¶¶ 12–13. The median recorded bond rose from $7,500 to $10,000, and the share of bonds recorded above $15,000 more than doubled, from 9.8% to 23.8%. *Id.* ¶¶ 15–16. Denials as a share of completed records increased for all eleven immigration judges shown in the data. *Id.* ¶ 23. Among California's detention-facility immigration courts, Adelanto was the only one with both a higher mean and a higher median recorded bond after November 10, and the only one whose grant rate declined. *Id.* ¶¶ 26–27.

80. Sending Petitioner to that forum would also place the cost of the Government's unlawful arrest on a family that has already paid for counsel and government fees to pursue the lawful immigrant visa process and that has lost its only income. *Supra* ¶ 33. Requiring Ms. Castaneda Peralta, who has no income of her own, to retain detention counsel, litigate bond, and post thousands of dollars to restore the liberty her husband had before an unauthorized arrest would compound the violation rather than remedy it. The bond process should not operate as a price a family must pay for relief from custody the Government had no authority to initiate.

**D. The Bond Process, Including Any Appeal to the Board, Would Be Futile and Would Only Prolong an Unlawful Detention**

81. Petitioner has not sought a custody redetermination, and he should not be required to do so before this Court acts. A bond hearing could not address the claims at the core of this Petition, *supra* ¶ 60, and requiring him to seek one would simply route him through a process that cannot provide the remedy he needs: an immigration judge who is not a neutral arbiter, *supra* ¶ 77, followed, if bond is denied or set beyond his family's means, by an appeal to a Board that is no more independent and takes months to decide detained appeals.

82. Nor is the Board independent of the Attorney General. Its members are attorneys appointed by the Attorney General to act as his delegates in the cases that come before them, and it is bound by his decisions. 8 C.F.R. § 1003.1(a)(1), (d)(1). The Attorney General may direct that any case be referred to him for decision. *Id.* § 1003.1(h)(1). It was the Board, in *Yajure Hurtado*, that adopted the position that persons in Petitioner's position may not be released on bond at all. 29 I. & N. Dec. at 216.

83. Any appeal from a bond denial would itself inflict irreparable harm through delay. EOIR's records of direct bond appeals show that the median time to decision rose from 87 days in the fourth quarter of 2025 to 200 days in the first quarter of 2026. Robinson Decl. Ex. I ("Salazar BIA Decl.") ¶ 12. In the fourth quarter of 2025 and the first quarter of 2026, the Board sustained no bond appeal filed by a noncitizen. *Id.* ¶¶ 19, 25. Courts regularly waive exhaustion for that reason. *See W.T.M. v. Bondi*, No. 2:25-cv-02428-RAJ-BAT, 2026 WL 262583, at *3 (W.D. Wash. Jan. 30, 2026); *Y.S.G. v. Andrews*, No. 2:25-cv-1884-SCR, 2025

WL 2979309, at *7 (E.D. Cal. Oct. 22, 2025). For a father separated from his two young daughters, and a wife who depends on him for the family's income and his own care, months of bond litigation and appeal cannot restore what is lost in the meantime, and neither the immigration judge nor the Board could decide the claims that are the core of this Petition in any event.

**E. Continued Detention Is Irreparable Harm**

84. "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018). The Ninth Circuit has recognized the "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention." *Hernandez*, 872 F.3d at 995. Every additional day of confinement keeps Petitioner from his daughters, from his wife, who depends on him for the family's income and her own care, and from the immigration process he was pursuing when Respondents took him.

## CLAIMS FOR RELIEF

## COUNT ONE

### Warrantless Arrest Without Statutory Authority: 8 U.S.C. §§ 1226(a), 1357(a)(2)

85. Petitioner repeats and incorporates by reference each allegation in the preceding paragraphs.

86. Section 1226(a) permits an arrest only on a warrant issued before the arrest. *Jennings*, 583 U.S. at 302. No warrant for Petitioner has been produced, and on information and belief none existed when ICE officers took him into custody at the ASC. *Supra* ¶ 41.

87. Nor did § 1357(a)(2) authorize the arrest. Whatever officers believed about Petitioner's status, no officer could have reasonably believed that he was likely to escape before a warrant could be obtained. He had identified himself to the Government in a sworn application, disclosed his home address, retained counsel, and appeared at the exact time and place USCIS designated. Because he presented himself to the Government, there was no flight concern at all. He was inside the ASC when ICE officers took him into custody. Those are the facts ICE's own policy identifies as weighing against flight: a known identity, a home, a family,

and employment. *Supra* ¶ 54. Unlawful presence, the only fact Respondents could invoke, is the first predicate of § 1357(a)(2), not the second, and it cannot satisfy both. 8 U.S.C. § 1357(a)(2); *supra* ¶¶ 54, 56.

88. The circumstances of the arrest foreclose any claim of exigency. If ICE selected Petitioner for arrest before his appointment, its ability to plan the arrest proves that it had time to obtain a warrant. If ICE decided to arrest him only after he arrived, nothing it could have learned at a biometrics check-in established any likelihood of escape, and nothing prevented officers from seeking a warrant while he remained inside the ASC. Either way, the warrantless-arrest exception was unavailable. The Government cannot convert the compliance that made Petitioner accessible into a reason to dispense with the statute's safeguards.

89. No officer documented any escape determination, and on information and belief none was made. *Supra* ¶ 41. ICE's own policy requires officers to document the facts supporting a warrantless arrest, including their findings on escape risk, and no such documentation has been produced. *M-J-M-A-*, 822 F. Supp. 3d at 1173; *supra* ¶ 54.

90. Petitioner did not need to be pursued, located, or kept from fleeing. He presented himself to the Government at its direction, and from the moment he checked in at the ASC there was no flight concern for any officer to address. The warrantless-arrest exception, designed for encounters in the field, has no application to a person who walks into a federal facility because the Government told him to. *Supra* ¶¶ 55–56. That the failure to obtain warrants is a documented practice in this District, *supra* ¶ 55, only underscores why Respondents cannot be presumed to have complied with the statute here.

91. An arrest made without the authority § 1226(a) or § 1357(a)(2) requires is unlawful. *Perez Cruz*, 926 F.3d at 1137; *Sanchez*, 904 F.3d at 650; *Mountain High Knitting*, 51 F.3d at 218. Petitioner remains in the custody that began with that arrest, and release is required.

**COUNT TWO**

**Violation of 8 C.F.R. § 287.8(c)(2): Warrantless Arrest Without Reason to Believe Petitioner Was Likely to Escape**

92. Petitioner repeats and incorporates by reference each allegation in the preceding paragraphs.

93. ICE's own regulations independently govern warrantless arrests. "A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained." 8 C.F.R. § 287.8(c)(2)(ii). An arrest may be made only when the officer has reason to believe that the person to be arrested is in the United States illegally, *id.* § 287.8(c)(2)(i), and the "reason to believe" standard is the equivalent of probable cause under the Fourth Amendment, *Perez Cruz*, 926 F.3d at 1137; *Tejeda-Mata*, 626 F.2d at 725.

94. Respondents arrested Petitioner without a warrant and without any specific, individualized basis to believe that he was likely to escape. To the contrary, Petitioner had disclosed his identity, address, and immigration history to the Government in his I-601A, appeared at the time and place USCIS designated, and was inside the ASC when ICE officers took him into custody. *Supra* ¶¶ 35–37. His compliance with the Government's directive affirmatively demonstrated that he was not a flight risk.

95. An agency must follow its own binding regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–68 (1954); *Morton v. Ruiz*, 415 U.S. 199, 232–36 (1974); *Alcaraz v. INS*, 384 F.3d 1150, 1162 (9th Cir. 2004). An arrest made in violation of § 287.8(c)(2) is unlawful. *Sanchez*, 904 F.3d at 650; *Perez Cruz*, 926 F.3d at 1137; *Qu*, ECF No. 10. Petitioner remains in the custody that began with that unlawful arrest, and release is required.

**COUNT THREE**

**Arrest Without a Pre-Existing Warrant or Notice to Appear: 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(b)(1), 287.5(e)(2)**

96. Petitioner repeats and incorporates by reference each allegation in the preceding paragraphs.

97. If Respondents produce a Form I-200, it cannot authorize Petitioner's arrest unless it was validly issued and in existence when he was first restrained. Whether a seizure is an arrest turns on the objective restraints imposed, not on the moment an agency form first uses the word. *Del Vizo*, 918 F.2d at 824–25. The relevant moment is when Petitioner ceased to be free to leave the ASC, not when he was booked into detention or served with paperwork. A Form I-200 signed after that moment, even one bearing the same date, does not convert the seizure into a warrant arrest. *Dorantes Saldivar*, ECF No. 14, at 12 (petitioner arrested without a warrant where the Form I-200, though dated the day of the arrest, appeared to have been issued after it); *Castro Chivalan*, ECF No. 6, at 8–9; *Urias*, 2026 WL 1710375, at *4–6.

98. Any I-200 would also be invalid if no Notice to Appear had been issued when it was signed, 8 C.F.R. § 236.1(b)(1); *M-J-M-A-*, ECF No. 170, at 9–11, or if it was signed by a supervisor who participated in planning or conducting the operation rather than by a sufficiently independent officer, *Abel*, 362 U.S. at 236; *M-J-M-A-*, ECF No. 170, at 11, 20–21. An arrest under an invalid warrant "is necessarily a warrantless arrest," *id.* at 11, which must satisfy § 1357(a)(2) and, for the reasons in Count One, cannot.

99. No Form I-200 or Notice to Appear was served on Petitioner or provided to his counsel, and no Notice to Appear has been filed with the immigration court. *Supra* ¶¶ 41–42; Robinson Decl. Ex. G. Upon information and belief, no Notice to Appear had been issued, as 8 C.F.R. § 236.1(b)(1) requires, when Petitioner was taken into custody. Petitioner was therefore arrested without a valid, pre-existing warrant, and his arrest was a warrantless arrest that, for the reasons stated in Count One, § 1357(a)(2) did not authorize. That defect "alone is sufficient to render the arrest improper and justify Petitioner's release." *Quintero Meza*, 2026 WL 2875630, at *3; *Zurita Navarro*, 2026 WL 2294963, at *2. Nor could any Form I-200

Respondents might now produce cure that defect, because no Notice to Appear existed when Petitioner was arrested. *Supra* ¶ 57.

**COUNT FOUR**

**Detention Without an Individualized Custody Determination: 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(c)(8), 287.3(d)**

100. Petitioner repeats and incorporates by reference each allegation in the preceding paragraphs.

101. Section 1226(a) and its regulations require the arresting agency, before or at the time of detention and in any event within 48 hours of a warrantless arrest, to determine whether the person will be continued in custody or released, considering whether release would pose a danger and whether he is likely to appear. 8 C.F.R. §§ 236.1(c)(8), 287.3(d). On information and belief, no officer made that determination for Petitioner. He has received no Form I-286, no Notice of Custody Determination, and no statement of any reason for his detention beyond the fact that he lacks status. *Supra* ¶ 41.

102. Had an officer made that determination, every relevant fact would have favored release: more than thirteen years of residence at a known address, a lawful permanent resident wife and two United States citizen daughters, ten years of steady work with the same employer, no criminal history of any kind, no prior immigration violation beyond the entry his pending application addresses, and a record of complying with the Government's directives up to and including appearing at the appointment where he was arrested. An undifferentiated assertion of unlawful presence cannot explain why confinement was necessary.

103. Detention without the initial custody determination § 1226(a) requires is unlawful, and courts in this District have ordered release on that ground alone. *Dorantes Saldivar*, ECF No. 14, at 11–16; *Juarez Evangelista*, ECF No. 10, at 5–9; *see Zurita Navarro*, 2026 WL 2294963, at *2–3; *Quijay Garcia*, 2026 WL 1972386, at *5–8. Petitioner should not be required to guess the agency's reasons and then disprove them before an immigration judge when the agency never completed the threshold evaluation in the first place.

## COUNT FIVE

### Violation of the Fourth Amendment: Unreasonable Seizure

104. Petitioner repeats and incorporates by reference each allegation in the preceding paragraphs.

105. Petitioner was seized, at the latest, when ICE officers took him into custody inside the ASC. *Mendenhall*, 446 U.S. at 554. At that moment, no warrant authorized the seizure, and officers had no basis to believe he was likely to escape before one could be obtained. *Supra* Count One. Information gathered after he was restrained cannot justify the restraint. *J.L.*, 529 U.S. at 271.

106. No judge or neutral officer has since determined that probable cause supports Petitioner's continued detention. *Gerstein*, 420 U.S. at 114, 125; *Gonzalez*, 975 F.3d at 824. His seizure and continued detention violate the Fourth Amendment. Petitioner does not seek suppression of evidence in removal proceedings; he seeks release from custody that began with, and continues to depend on, an unlawful seizure.

## COUNT SIX

### Violation of the Fifth Amendment: Procedural Due Process

107. Petitioner repeats and incorporates by reference each allegation in the preceding paragraphs.

108. The Due Process Clause requires constitutionally adequate procedures before the Government may deprive a person of liberty through civil detention, and courts determine what process is due by weighing (1) the private interest affected, (2) the risk of erroneous deprivation through the procedures used and the probable value of additional safeguards, and (3) the Government's interest, including the burdens additional procedures would entail. *Mathews*, 424 U.S. at 335. The Government's discretion to detain under § 1226(a) is not "unlimited" and must comport with due process. *Zadvydas*, 533 U.S. at 698. Each factor weighs decisively in Petitioner's favor.

109. *Private interest.* Petitioner has a substantial liberty interest in remaining free from confinement. *Zadvydas*, 533 U.S. at 690. That interest is heightened by more than thirteen

years of life in the community at an address known to the Government, by his marriage to a lawful permanent resident whose petition for him the Government approved, by his role as the sole provider for two United States citizen daughters, and by his participation in a Government process that required him to disclose everything about himself and appear when told. *Ma*, ECF No. 9; *Okeshov*, ECF No. 12. He was doing exactly what the Government directed him to do when it took his liberty.

110. *Risk of erroneous deprivation.* The risk of erroneous deprivation is high, and the value of additional process substantial. Respondents relied on nothing but a lack of status the Government had known about for years and that his pending application addresses. They made no individualized assessment of danger or flight, gave Petitioner no notice of the basis for his detention, and gave him no opportunity to be heard. The risk of erroneous deprivation is considerable where a person has received no custody determination at all. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). Any process, including the initial custody determination the regulations already require, would have revealed that detention served no legitimate purpose.

111. *Government interest.* The Government's interest in dispensing with process was negligible. "In immigration court, custody hearings are routine," *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025), and the burden of the initial custody determination the regulations already require is minimal. USCIS set the appointment in advance at its own facility; Respondents knew exactly where and when Petitioner would be and had every opportunity to evaluate whether detention was warranted and to obtain lawful authority beforehand. Balancing these factors, Petitioner's detention without notice, reasons, or any opportunity to be heard violates the Due Process Clause, and only his release can remedy that violation.

112. Respondents' conduct also threatens a second protected interest: Petitioner's interest in lawful consideration of his pending I-601A. *Supra* ¶ 63. The regulations provide that USCIS "will adjudicate" a properly filed application under the governing standards and will notify the applicant of its decision. 8 C.F.R. § 212.7(e)(8), (9)(i); *Ching*, 725 F.3d at 1155–58;

*Jimenez*, 334 F. Supp. 3d at 386–89. Respondents arrested Petitioner at the appointment that application required, leaving its biometrics requirement unfulfilled, and the arrest exposes him to removal proceedings that may then be invoked to deny the application. Yet USCIS may deny an I-601A without first issuing a request for evidence or a notice of intent to deny, 8 C.F.R. § 212.7(e)(8), and because USCIS has exclusive jurisdiction over the application, *id.* § 212.7(e)(1), proceedings before an immigration judge offer no forum in which to contest a disqualification before it takes effect. Under *Mathews*, Petitioner's interest in consideration of the application the Government invited him to file is weighty, the risk of erroneous deprivation through a disqualification imposed without notice is substantial, and notice and an opportunity to respond would impose little burden. At a minimum, the Fifth Amendment forbids Respondents from treating his arrest as an abandonment of the application, or denying it on a ground arising after filing, without notice and a meaningful opportunity to respond.

**COUNT SEVEN**

**Violation of the Fifth Amendment: Substantive Due Process (Arbitrary, Punitive, and Retaliatory Detention)**

113. Petitioner repeats and incorporates by reference each allegation in the preceding paragraphs.

114. Civil immigration detention must bear a reasonable relation to its only legitimate purposes, ensuring appearance and protecting the community. *Zadvydas*, 533 U.S. at 690–92; *Jackson*, 406 U.S. at 738; *Demore v. Kim*, 538 U.S. 510, 528 (2003). The Due Process Clause protects against "the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Petitioner's detention serves neither legitimate purpose. He has no criminal record, and he was arrested at the very appointment he obeyed the Government's order to attend.

115. No legitimate, nonpunitive purpose supports Petitioner's detention. Civil immigration detention must be nonpunitive in purpose and effect, *Zadvydas*, 533 U.S. at 690, and it is permissible only as a regulatory measure reasonably related to a legitimate governmental objective, not as punishment, *Salerno*, 481 U.S. at 746–47. Detention is not

needed to secure Petitioner's appearance: he has lived in Los Angeles for more than thirteen years, has a lawful permanent resident wife and two United States citizen daughters who depend on him, has worked for the same employer for a decade, has pursued every step of the lawful immigrant visa process through counsel, and was taken into custody while complying with a Government directive to appear. *Supra* ¶¶ 21–35. Detention is not needed to protect the community: he has never been arrested, charged, or convicted of any offense. *Supra* ¶ 21. And detention cannot be justified as a means of facilitating removal, because Respondents have not even initiated removal proceedings, *supra* ¶ 42, and the process Petitioner is pursuing would itself have him depart for his consular interview. Lack of lawful status is not a purpose of detention at all; treating it as one "effectively equates unlawful status with being an automatic flight risk," *Garcia Miranda v. Hernandez*, No. 2:26-cv-00906-JNW, 2026 WL 1328227, at *4 (W.D. Wash. May 13, 2026), and converts discretionary detention into "de facto mandatory detention," *Segura Serrano v. Scott*, No. 2:26-cv-01268-LK, 2026 WL 1674357, at *6–7 (W.D. Wash. June 1, 2026). Detention that serves no legitimate, nonpunitive purpose is punishment, and the Due Process Clause forbids it. *See Lewis*, 523 U.S. at 846–47; *Jackson*, 406 U.S. at 738.

116. The manner of Petitioner's detention independently offends due process. Respondents had every opportunity for deliberation. The Government compelled Petitioner's attendance under threat of abandoning his application and turned him over to ICE officers at the appointment itself, for the one fact his pending application was designed to address. Using a procedure DHS created to reduce the separation of families as the instrument for separating this one, with the hardship to his wife and daughters documented in the Government's own file, is arbitrary executive action the Due Process Clause forbids. *See Lewis*, 523 U.S. at 846–53; *You*, 321 F. Supp. 3d at 466.

117. Respondents' conduct also deprived Petitioner of his protected interest in pursuing the relief Congress and DHS made available to him. *Arevalo v. Ashcroft*, 344 F.3d at 15. Immigration authorities created the I-601A process for applicants exactly like Petitioner and required him to appear for biometrics to pursue it; they then used that appearance to detain him and to prevent him from completing it. When the requirements of a process are used to

prevent a person from accessing the relief it offers, "there is a chilling effect on due process." *Portillo Vasquez*, slip op. at 12; *see Jimenez*, 334 F. Supp. 3d at 386–89. The wrong is not the existence of enforcement authority; it is the deliberate use of a Government-created benefits procedure for an undisclosed and contrary purpose, so that the Government creates the very impediment that may then be invoked to defeat the benefit it invited Petitioner to seek. Using the coercive power of detention to punish an applicant for complying with the Government's own directive, when he posed no danger and no flight risk, shocks the conscience. *See Lewis*, 523 U.S. at 846–47. No legitimate governmental interest supports it, and the Constitution forbids it.

**COUNT EIGHT**

**Violation of the Administrative Procedure Act: Arbitrary and Capricious Agency Action and Abuse of Discretion: 5 U.S.C. § 706(2)(A)**

118. Petitioner repeats and incorporates by reference each allegation in the preceding paragraphs.

119. Respondents' decision to arrest and detain Petitioner is final agency action: it consummated the agency's custody decision and produced immediate legal consequences. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). Petitioner does not challenge any decision to commence proceedings or any exercise of prosecutorial discretion. He challenges the lawfulness of the arrest and detention themselves, and the use of a compulsory USCIS benefits appointment to effect them without the authority the statutes require.

120. The APA directs reviewing courts to hold unlawful and set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency acts arbitrarily when it fails to consider an important aspect of the problem or fails to articulate a rational connection between the facts found and the choice made. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

121. Upon information and belief, Respondents gave no reason for the arrest at all, and the only basis they could invoke, a lack of status, was already disclosed in the application

USCIS was processing. *Judulang*, 565 U.S. at 53. They failed to consider the relevant factors, including the approved I-130, the pending I-601A, the documented hardship to Petitioner's wife and daughters, his more than thirteen years of residence, his lack of any criminal history, and his compliance with the Government's directives, and they ignored the serious reliance interests created by a program that invited Petitioner to disclose everything about himself, by DHS's repeated assurances that participation would not itself expose applicants to removal, and by a regulation that required him to appear on pain of abandonment. *Supra* ¶ 66; *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30–33 (2020); *Fox Television Stations*, 556 U.S. at 515–16. An agency's approach "must be tied, even if loosely, to the purposes of the immigration laws or the appropriate operation of the immigration system," *Judulang*, 565 U.S. at 55, and arresting an applicant at the step the program requires is tied to no purpose of the program at all. *Wanrong Lin*, 377 F. Supp. 3d at 564; *Martinez*, 341 F. Supp. 3d at 410. To the extent Respondents now treat the program's applicants as enforcement targets, they have departed from DHS's stated position without acknowledging the change or explaining it, as an agency changing course must. *Fox Television Stations*, 556 U.S. at 515–16; *supra* ¶ 66. They made no individualized assessment of flight risk or danger before taking his liberty, and no material change in circumstances suggested that he posed either. And they used a required step in a program DHS established to reduce family separation as the means of imposing it, frustrating the very adjudication USCIS had summoned him to complete. *You*, 321 F. Supp. 3d at 466. Any explanation Respondents develop in litigation cannot cure the absence of contemporaneous reasoning. *Arrington*, 516 F.3d at 1112–13. Respondents' decision to arrest and detain Petitioner was arbitrary, capricious, and an abuse of discretion.

122. The Court should hold unlawful and set aside Respondents' decision to arrest and detain Petitioner and order his release. 5 U.S.C. §§ 704, 706(2)(A). Petitioner seeks the same relief independently under 28 U.S.C. § 2241.

## COUNT NINE

**Violation of the Administrative Procedure Act: Agency Action Not in Accordance with Law, in Excess of Statutory Authority, and Without Observance of Procedure Required by Law: 5 U.S.C. § 706(2)(A), (C), (D)**

123. Petitioner repeats and incorporates by reference each allegation in the preceding paragraphs.

124. The APA also requires reviewing courts to hold unlawful and set aside agency action that is "otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), "in excess of statutory jurisdiction, authority, or limitations," *id.* § 706(2)(C), or taken "without observance of procedure required by law," *id.* § 706(2)(D).

125. Respondents' arrest and detention of Petitioner were not in accordance with law and exceeded their statutory authority, because they arrested him without a pre-existing warrant and without satisfying the narrow warrantless-arrest exception of 8 U.S.C. § 1357(a)(2). *Supra* Counts One and Three; *see Arizona*, 567 U.S. at 407–08. They also acted without observance of the procedures required by 8 C.F.R. §§ 236.1(b)(1), 236.1(c)(8), 287.3(d), and 287.8(c)(2), by arresting him without a prior or contemporaneous Notice to Appear, without reason to believe he was likely to escape, and without any individualized custody determination. *Supra* Counts Two through Four; *see Accardi*, 347 U.S. at 266–68. A court in this District has ordered the release of applicants arrested without warrants at a scheduled USCIS biometrics appointment on precisely this basis. *Qu*, ECF No. 10.

126. Respondents may not compound those violations by using the arrest to defeat Petitioner's application in disregard of the I-601A regulations, which bind them. *Accardi*, 347 U.S. at 266–68; *Morton*, 415 U.S. at 235. Those regulations make a removal proceeding disqualifying only if it was pending "at the time of filing," 8 C.F.R. § 212.7(e)(4)(iii); make abandonment turn on a failure to appear for biometrics, *id.* § 212.7(e)(6)(ii); and require USCIS to adjudicate a properly filed application under those standards, *id.* § 212.7(e)(8). Treating Petitioner's apprehension at the appointment as an abandonment, or treating proceedings

commenced after his arrest as a bar, would be contrary to those regulations and therefore not in accordance with law and in excess of Respondents' authority. 5 U.S.C. § 706(2)(A), (C).

127. To the extent Respondents apply a generally applicable rule or interpretation treating removal proceedings commenced after filing as disqualifying, that rule adds a substantive eligibility condition to a regulation DHS adopted through notice-and-comment rulemaking. *Supra* ¶ 66. An agency must use the same procedures to amend a legislative rule that it used to issue it. *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96–101 (2015); *see* 5 U.S.C. § 553. DHS has not amended § 212.7(e). Nor, on information and belief, has any such rule been published in the Federal Register, and a person may not be adversely affected by a rule or interpretation of general applicability that was required to be published and was not. 5 U.S.C. § 552(a)(1); *Morton*, 415 U.S. at 232–36. Applying such a rule to Petitioner would be action taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

128. The Court should hold unlawful and set aside Respondents' arrest and detention of Petitioner under 5 U.S.C. § 706(2)(A), (C), and (D) and order his release. Separately and independently, Petitioner seeks the same relief under 28 U.S.C. § 2241.

**COUNT TEN**

**Mandamus Act, 28 U.S.C. § 1361, and Administrative Procedure Act, 5 U.S.C. §§ 555(b), 706(1): Agency Action Unlawfully Withheld**

129. Petitioner repeats and incorporates by reference each allegation in the preceding paragraphs.

130. Courts must compel discrete agency action that is legally required and unlawfully withheld or unreasonably delayed. 5 U.S.C. §§ 555(b), 706(1); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–65 (2004). Mandamus relief is available where the agency has a clear, certain, and mandatory duty. *Vaz v. Neal*, 33 F.4th 1131, 1135–36 (9th Cir. 2022); 28 U.S.C. § 1361.

131. USCIS has that duty. It "will adjudicate" a properly filed provisional waiver application in accordance with § 212.7(e) and INA § 212(a)(9)(B)(v), and it must notify the applicant and counsel of its decision. 8 C.F.R. § 212.7(e)(8), (9)(i). Biometrics are a required

step in that adjudication, *id.* § 212.7(e)(3)(ii), (e)(6)(i), and Respondents' own conduct prevented Petitioner from completing it. Respondents may not withhold the adjudication the regulation requires by detaining the applicant at the very step it demands and then treating that step as unfulfilled.

132. The Court should compel Respondents to reschedule Petitioner's biometrics appointment promptly after his release and to adjudicate his Form I-601A under the standards set out in 8 C.F.R. § 212.7(e), without treating his apprehension as an abandonment or proceedings commenced after filing as disqualifying. Petitioner does not ask the Court to direct the outcome of that adjudication. *See Norton*, 542 U.S. at 64–65.

**REMEDY: IMMEDIATE RELEASE AND PROTECTION AGAINST RE-DETENTION**

133. Release is the appropriate remedy for each of the violations set out above, whether the Court rests its decision on the arrest, on the absence of any custody determination, or on the Constitution. "The purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up). Where detention "has been unlawful from the outset," the "most appropriate remedy" is "to return Petitioner to the previous status quo by releasing him from detention." *Juarez Evangelista*, ECF No. 10, at 7–8 (quoting *Huerta Reyes v. Santacruz*, No. 5:26-cv-03394-E, 2026 WL 2069974, at *2 (C.D. Cal. July 13, 2026)); *accord Dorantes Saldivar*, ECF No. 14, at 11–16. This Court may dispose of the matter "as law and justice require." 28 U.S.C. § 2243.

134. An order directing Respondents to supply the omitted process, or a bond hearing, would not remedy the violation. Completing the § 1226(a) sequence now would put Petitioner where he would have been had Respondents processed him correctly after seizing him without authority, not where he would have been had that seizure never occurred, which is at home with his wife and daughters, his I-601A pending. A contrary rule would reward the conduct at issue: ICE could use mandatory immigration appointments to take physical control of applicants identified in advance, arrest them without a warrant or escape determination, prepare the

paperwork afterward, and then insist that the family pay a bond to undo the confinement. That would erase the statutory distinction between authority to arrest and discretion to release.

135. The Court should order Petitioner's release on his own recognizance, on the same terms on which he lived in the community before November 12, 2026. He lived here for more than thirteen years without GPS, ankle monitoring, SmartLINK, or any reporting requirement; he has no criminal history; and no officer or judge has found that he presents a danger or a flight risk. *Castro Chivalan*, ECF No. 6, at 9–10 (ordering release within twenty-four hours, return of property, and no placement in Alternatives to Detention); *Okeshov*, ECF No. 12.

136. Release alone would not afford complete relief, because it would leave Respondents free to re-detain Petitioner on the same unlawful basis. The Court should enjoin re-detention without notice and a pre-deprivation hearing before an immigration judge at which the Government bears the burden of justifying detention by clear and convincing evidence. *See Boumediene v. Bush*, 553 U.S. 723, 779–80 (2008); *Dorantes Saldivar*, ECF No. 14, at 16; *Singh*, 638 F.3d at 1203. Such relief is especially warranted here because Respondents have already shown that they will use a compulsory USCIS appointment to accomplish an arrest the statute does not authorize; Petitioner should not be left to depend on their good faith not to do so again. Such an order would not foreclose lawful enforcement action supported by genuinely new and independently established grounds.

137. Finally, the Court should ensure that the challenged arrest does not itself defeat the administrative process Petitioner was pursuing. Petitioner appeared for the biometrics appointment his I-601A required; any failure to complete it is the result of Respondents' decision to take him into custody there, not a failure to appear. His apprehension and detention therefore cannot be treated as an abandonment of his application under 8 C.F.R. § 212.7(e)(6)(ii). Nor may any removal proceedings Respondents commence after his arrest be used to disqualify an application that was properly filed when he was in no proceedings at all: the regulation fixes the relevant inquiry "at the time of filing the application for a provisional unlawful presence waiver." 8 C.F.R. § 212.7(e)(4)(iii); *see Accardi*, 347 U.S. at 266–68.

Petitioner does not ask this Court to adjudicate the waiver or confer any status; he asks only that the Government not be permitted to benefit from its own unlawful conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

1. Assume jurisdiction over this matter and issue an order to show cause requiring Respondents to file a return within three days certifying the true cause of Petitioner's detention, 28 U.S.C. § 2243;
2. Order that Respondents not transfer Petitioner outside the Central District of California during the pendency of this Petition;
3. Order Respondents to disclose Petitioner's current location to his counsel within twenty-four (24) hours and to provide counsel prompt, confidential access to him;
4. Should Respondents attempt to defend Petitioner's detention, order them to produce with their return: (a) any Form I-200 issued for Petitioner, together with native electronic records and audit trails showing when it was requested, prepared, approved, signed, issued, and executed; (b) any Notice to Appear, together with records showing when it was prepared, signed, issued, and served; (c) records identifying the officer who signed any Form I-200 and that officer's delegated authority and role in Petitioner's arrest; (d) any Form I-213, Form I-286, or other record of a custody determination; (e) any record of a pre-arrest determination that Petitioner was likely to escape before a warrant could be obtained; (f) USCIS records of Petitioner's November 12, 2026 appointment, including check-in records, processing notes, and any record of communications with ICE concerning Petitioner; and (g) all communications, referrals, target lists, and operational plans between or within ICE and USCIS identifying Petitioner, or applicants scheduled at the ASC on November 12, 2026, for enforcement action;
5. Declare that Petitioner's arrest and continued detention violate 8 U.S.C. §§ 1226(a) and 1357(a)(2), their implementing regulations, the Fourth and Fifth Amendments, and the Administrative Procedure Act;

6. Issue a writ of habeas corpus ordering Respondents to release Petitioner immediately on his own recognizance, and in no event more than twenty-four (24) hours after this Court's order, under the same conditions that existed before his arrest on November 12, 2026, without bond, GPS monitoring, ankle monitoring, SmartLINK, enrollment in the Intensive Supervision Appearance Program ("ISAP"), reporting requirements, geographic, travel, or movement restrictions, or any other Alternatives to Detention restriction, and to return all property and documents taken from him;
7. Order Respondents to refrain from imposing any new or more restrictive conditions of supervision as a consequence of the November 12, 2026 arrest and detention, restoring the status quo ante;
8. Order Respondents to file a status report confirming Petitioner's release, and any conditions imposed, within forty-eight (48) hours of release;
9. Enjoin Respondents from re-detaining Petitioner without first providing at least seven (7) days' notice and a hearing before an immigration judge, held prior to any re-detention, at which the Government bears the burden of establishing by clear and convincing evidence that Petitioner is a danger to the community or a risk of flight and that no condition or combination of conditions of release would reasonably assure his appearance and the safety of the community;
10. Declare that Petitioner's apprehension and detention at his November 12, 2026 biometrics appointment do not constitute a failure to appear for biometrics or an abandonment of his Form I-601A under 8 C.F.R. § 212.7(e)(6)(ii); order Respondents to preserve his I-601A file, to refrain from denying or otherwise treating the application as abandoned on that basis, to reschedule his biometrics appointment promptly after his release, and to adjudicate the application under the standards set out in 8 C.F.R. § 212.7(e); and declare that removal proceedings commenced after the proper filing of his Form I-601A do not, standing alone, render

him ineligible for a provisional unlawful presence waiver under 8 C.F.R. § 212.7(e)(4)(iii);

11. Award Petitioner reasonable attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, or any other applicable law; and

12. Grant such other and further relief as this Court deems just and proper.

Dated: November 12, 2026

Respectfully submitted,
/s/ Emily L. Robinson
Emily L. Robinson (SBN 285343)
Law Office of Emily L. Robinson
5012 Eagle Rock Blvd.
Los Angeles, CA 90041
Counsel for Petitioner

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I, Emily L. Robinson, am an attorney admitted to practice law in the State of California and represent Petitioner, Hermenegildo Albinez Antunez. I submit this verification on Petitioner's behalf because he is detained and because many of the allegations of this Petition require legal knowledge he does not possess. I have read the foregoing Petition. Its factual allegations are based on my communications with those close to Petitioner, including his wife, Rebeca Castaneda Peralta, and his immigration counsel, Esmeralda Santos, and on the documents attached as exhibits to the accompanying Declaration of Emily L. Robinson. I verify under penalty of perjury under the laws of the United States that the factual statements in the Petition are true and correct to the best of my knowledge, information, and belief.

Dated: November 12, 2026

/s/ Emily L. Robinson
Emily L. Robinson (SBN 285343)
Counsel for Petitioner