UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 26-06818-KK-AYPx** | Date: | November 17, 2026 |
| Title: | ***Hermenegildo Albinez Antunez v. Markwayne Mullin, et al.*** | | |

| | |
|---|---|
| Present: The Honorable | KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| Dominique Carr | Not Reported |
| Deputy Clerk | Court Reporter |

| | |
|---|---|
| Attorney(s) Present for Petitioner(s): | Attorney(s) Present for Respondent(s): |
| None Present | None Present |

**Proceedings:** **(In Chambers) Order GRANTING Petition for Writ of Habeas Corpus [Dkt. 1]**

## I.
## INTRODUCTION

On November 12, 2026, petitioner Hermenegildo Albinez Antunez, A# 242-529-557 ("Petitioner"), who is currently detained in the custody of U.S. Immigration and Customs Enforcement ("ICE"), filed a Petition for Writ of Habeas Corpus ("Petition") against respondents Markwayne Mullin, Todd Blanche, David Venturella, Andre Quinones, the Executive Office for Immigration Review, ICE, U.S. Citizenship and Immigration Services ("USCIS"), and U.S. Department of Homeland Security (collectively, "Respondents"). ECF Docket No. ("Dkt.") 1, Petition ("Pet.").

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, Petitioner's Motion is **GRANTED**.

## II.
## BACKGROUND

### A. RELEVANT FACTS

Petitioner is a 33-year-old citizen of Mexico. Pet. ¶¶ 1, 21. In 2013, Petitioner entered the United States without inspection at the age of 19. Id. ¶ 21. Petitioner has continuously lived and worked in Los Angeles since that time. Id. ¶¶ 21, 23.

On August 9, 2022, Petitioner married his wife, who is a lawful permanent resident. Id. ¶ 22. They have two daughters both born in the United States. Id. Petitioner is an assistant manager at a restaurant and the sole financial provider for his family. Id. ¶ 23. Petitioner has no criminal history. Id. ¶¶ 1, 37-38.

On September 21, 2022, Petitioner's wife filed a Form I-130, Petition for Alien Relative, on Petitioner's behalf. Id. ¶ 24. On November 7, 2025, USCIS approved the Form I-130 and forwarded it to the Department of State's National Visa Center. Id. On October 16, 2026, Petitioner also filed a Form I-601A provisional waiver request. Id. ¶ 28; see also Dkt. 1-1, Declaration of Emily Robinson ("Robinson Decl."), Exs. B-D (collectively, "Immigration Applications").

On November 12, 2026, Petitioner appeared for his scheduled biometrics appointment with USCIS in Gardena, California. Pet. ¶¶ 34-36. Petitioner was detained by ICE at his appointment without a warrant or explanation. Id. ¶¶ 36-37. After his arrest, Petitioner was transported to the ICE Los Angeles Field Office, id. ¶ 41, and then to Adelanto ICE Processing Center, where he remains today, see Robinson Decl. ¶ 17, Ex. A (finding no record of location on filing date).[1]

## B. PROCEDURAL HISTORY

On November 12, 2026, Petitioner filed the operative Petition against Respondents, raising the following grounds for relief:

**Count One:** Warrantless Arrest Without Statutory Authority, in violation of 8 U.S.C. §§ 1226(a), 1357(a)(2);
**Count Two:** Warrantless Arrest Without Reason to Believe Petitioner Was Likely to Escape, in violation of 8 C.F.R. § 287.8(c)(2);
**Count Three:** Arrest Without a Pre-Existing Warrant or Notice to Appear, in violation of 8 U.S.C. § 1226(a) and 8 C.F.R. §§ 236.1(b)(1), 287.5(e)(2);
**Count Four:** Detention Without an Individualized Custody Determination, in violation of 8 U.S.C. § 1226(a) and 8 C.F.R. §§ 236.1(c)(8), 287.3(d);
**Count Five:** Unreasonable Seizure, in violation of the Fourth Amendment;
**Count Six:** Procedural Due Process, in violation of the Fifth Amendment;
**Count Seven:** Substantive Due Process, in violation of the Fifth Amendment;
**Count Eight:** Arbitrary and Capricious Agency Action and Abuse of Discretion, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A);
**Count Nine:** Agency Action Not in Accordance with Law, in Excess of Statutory Authority, and Without Observance of Procedure Required by Law, in violation of the APA, 5 U.S.C. § 706(2)(A), (C), (D); and
**Count Ten:** Agency Action Unlawfully Withheld, in violation of the Mandamus Act, 28 U.S.C. § 1361, and the APA, 5 U.S.C. §§ 555(b), 706(1).

Pet. ¶¶ 85-132.

[1] The Court was able to independently confirm Petitioner's location through the ICE Online Detainee Locator System, available at https://locator.ice.gov/odls/#/search.

On November 13, 2026, the Clerk's Office entered a Notice of General Order 26-05 and Briefing Schedule. Dkt. 5. Pursuant to that schedule, "Counsel for Respondent[s] shall file a notice of appearance within 3 calendar days of the date the Clerk's Office issues this notice." Id. at 2.

As of the date of this Order, Respondents have failed to file a notice of appearance.[2]

This matter, thus, stands submitted.

## III. DISCUSSION

### A. APPLICABLE LAW

Under the Due Process Clause, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment . . . lies at the heart of the liberty" protected by the Due Process Clause. Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693. As the Supreme Court recently reaffirmed, "the Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings." A.A.R.P. v. Trump, 605 U.S. 91, 94 (2025) (citation modified) (quoting Trump v. J.G.G., 604 U.S. 670, 673 (2025)).

"Due process is flexible and calls for such procedural protections as the particular situation demands." United States v. Rivera-Valdes, 157 F.4th 978, 991 (9th Cir. 2025) (citation modified) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). In general, due process "requires some kind of a hearing before the State deprives a person of liberty or property." Shinault v. Hawks, 782 F.3d 1053, 1058 (9th Cir. 2015) (citation modified) (quoting Zinermon v. Burch, 494 U.S. 113, 127 (1990)). To determine "whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation," courts apply the three-part balancing test established in Mathews v. Eldridge, 424 U.S. 319 (1976). Yagman v. Garcetti, 852 F.3d 859, 864 (9th Cir. 2017) (citation modified) (quoting Shinault, 782 F.3d at 1057). Under the Mathews test, courts consider "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." Id. (citation modified) (quoting Shinault, 782 F.3d at 1057).

### B. ANALYSIS

Here, applying the Mathews test, the Court finds Respondents violated Petitioner's right to procedural due process by detaining him without a pre-deprivation hearing.[3]

---

[2] Pursuant to the governing briefing schedule, Dkt. 5, Respondents were required to enter a notice of appearance no later than November 16, 2026, and failed to do so. Hence, the Court construes the Petition as unopposed. See C.D. Cal. L.R. 7-12.

[3] Because the Court finds Petitioner is entitled to relief based on his procedural due process claim, the Court declines to address Petitioner's other claims. Additionally, the Court finds no basis to require Petitioner to exhaust administrative remedies. See Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) (noting exhaustion in habeas proceedings is a prudential matter); Hernandez v.

First, Petitioner has a substantial private interest in remaining out of immigration custody. Petitioner entered the United States in 2013 as a teenager, married his wife in August 2022, and filed his Form I-130 in September 2022. Pet. ¶¶ 21-24. Thus, when Petitioner and his wife filed the first of his Immigration Applications in September 2022, Petitioner knowingly and intentionally alerted Respondents to his presence in the country, yet Respondents "made a decision not to detain [him]" during the pendency of his applications. Kharitonova v. Albarran, No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026). USCIS even approved Petitioner's Form I-130 in November 2025, Pet. ¶ 24, and he filed his Form I-601A in October 2026, id. ¶ 28. Hence, for over four years, Respondents, with "full knowledge of Petitioner's identity, immigration status[,] and location during the pendency of [his] immigration application[] . . . continuously elected not to detain [him] while exercising authority over [his] legal proceedings." Zhou v. Janecka, No. EDCV 26-04167-DTB, 2026 WL 2365550, at *5 (C.D. Cal. Aug. 14, 2026). This decision to allow Petitioner to live freely in the community gave rise to "the most elemental of liberty interests – the interest in being free from physical detention by one's own government." Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004).

Additionally, while Respondents' decision not to detain Petitioner was discretionary, see 8 U.S.C. § 1226(a), that decision nonetheless created a protected interest in remaining at liberty while the government processed Petitioner's Immigration Applications, see Zhou, 2026 WL 2365550, at *4 (collecting cases finding a protectable interest where the government decided "not to detain [a petitioner] or otherwise impede [their] liberty while exercising authority over [them] for purposes of adjudicating [their] applications for immigration relief"); Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause."). Petitioner relied on this liberty interest to live freely "with family and friends and to form the other enduring attachments of normal life," Morrissey, 408 U.S. at 482, such as raising two young children with his wife and maintaining steady employment as an assistant restaurant manager, see Pet. ¶¶ 22-23. The length of Petitioner's freedom pending the adjudication of his Immigration Applications thus only strengthens his interest in his continued freedom from immigration detention. See Doe, 787 F. Supp. 3d at 1093 (finding the government's actions in conditionally allowing the petitioner to live outside immigration custody for five years created a protected liberty interest); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) (finding the more than two years a petitioner lived outside of immigration custody "heightened" her liberty interest). Accordingly, Petitioner establishes a significant private interest.

Second, the risk of erroneous deprivation is significant without a pre-detention hearing. Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. Zadvydas, 533 U.S. at 690; see also Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). Here, the government permitted Petitioner to live openly for over four

---

Mullin, No. EDCV 26-00585-JAK-ADSx, 2026 WL 846037, at *7-8 (C.D. Cal. Mar. 24, 2026) (reasoning "requiring administrative exhaustion would be futile" for due process claims and finding "continued detention" in violation of due process rights "constitute[s] irreparable harm" providing standalone "basis to waive exhaustion"). Moreover, because the Petition is unopposed, Respondents have waived any potential exhaustion argument.

years after he filed the first of his Immigration Applications. Pet. ¶ 24. Additionally, Petitioner maintained a clear criminal record. Id. ¶¶ 1, 37-38. The evidence before the Court thus "raises an inference that the government will have difficulty proving by clear and convincing evidence that Petitioner's detention is necessary to prevent danger to the community or his flight." Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1164 (C.D. Cal. 2025).

Given the significant risk of an erroneous deprivation of Petitioner's liberty, a pre-detention hearing would afford Petitioner the opportunity to demonstrate he does not pose a danger to the community or flight risk. See Pinchi, 792 F. Supp. 3d at 1035 (finding the risk of erroneous deprivation was significant where neither party "had an opportunity to determine whether there is any valid basis for [the petitioner's] detention"). Where, as here, a petitioner "has not received a hearing or other process prior to the revocation of [his] liberty, 'the risk of an erroneous deprivation of liberty is high.'" Zhou, 2026 WL 2365550, at *6 (citation modified) (quoting Singh v. Andrews, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025)). In contrast, without the procedural safeguard of a pre-detention hearing, Respondents could simply detain Petitioner at any time, regardless of whether his detention serves any valid governmental interest. See Fernandez v. Semaia, No. EDCV 25-03412-SPG-MBKx, 2026 WL 136229, at *6 (C.D. Cal. Jan. 13, 2026) (noting post-deprivation relief could result in the petitioner's indefinite detention "without any process"). Hence, Petitioner demonstrates a high risk of erroneous deprivation of his liberty without a pre-deprivation hearing.

Third, Respondents' interest in detaining Petitioner and the burden of a pre-detention hearing are both minimal. Indeed, Respondents do not oppose the Petition at all. Regardless, it is undisputed Respondents were aware of Petitioner's presence in the United States since at least September 2022, after the first of his Immigration Applications was filed. See Pet. ¶ 24. There is nothing in the Petition suggesting any material change in circumstances justifying Petitioner's detention. See Pinchi, 792 F. Supp. 3d at 1036 (finding no valid governmental interest where the government identified no changed circumstances regarding the petitioner's dangerousness or flight risk). In any event, the fact "the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025). Therefore, Respondents have minimal interest in detaining Petitioner without a pre-detention hearing. See Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (noting government has power to re-arrest petitioner at any point "but its interest in doing so without a hearing is low").

Finally, while Respondents would have expended resources in providing Petitioner with notice and a hearing before detaining him, "those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue." E.A. T.-B., 795 F. Supp. 3d at 1324. Additionally, custody hearings in immigration court are "routine" and impose only a "minimal" cost. Singh v. Bowen, No. EDCV 25-03034-CAS-PDx, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citation modified) (quoting Singh, 803 F. Supp. 3d at 1048). Indeed, Respondents' delay in arresting Petitioner for over four years after notice of his presence in the United States only confirms "a pre-deprivation hearing was entirely feasible and required." Galeano-Ariza v. Warden, No. EDCV 26-04081-HDV-BFMx, 2026 WL 2491404, at *4 (C.D. Cal. Aug. 24, 2026). Hence, Respondents' interest in detaining Petitioner without a pre-detention hearing is low.

In sum, the Court finds Petitioner has established a significant liberty interest in his freedom from immigration custody, a high risk of erroneous deprivation, and a minimal countervailing governmental interest in his detention, such that he was entitled to a pre-deprivation hearing before

being detained. Accordingly, Petitioner's detention without a pre-deprivation hearing violates his right to procedural due process guaranteed by the Fifth Amendment, and Petitioner is entitled to immediate release from Respondents' custody.

## IV.
## CONCLUSION

For the reasons set forth above, the Court orders as follows:

1. Petition for Writ of Habeas Corpus is **GRANTED**;
2. Respondents are **ORDERED TO IMMEDIATELY RELEASE** Petitioner Hermenegildo Albinez Antunez (A# 242-529-557) from their custody;
3. Respondents are **ORDERED** to return any confiscated property and documents to Petitioner upon his release;
4. Respondents are permanently **ENJOINED** from re-detaining Petitioner under 8 U.S.C. § 1226 without providing him with a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that Petitioner is a flight risk or a danger such that his physical custody is required; and
5. Respondents are **ORDERED** to file a status report regarding their compliance with this Order no later than three (3) court days of Petitioner's release.

**IT IS SO ORDERED**.